BAILEY CONROY,       )
            )
    Plaintiff,     )
            )
v.            ) Case No. 23-cv-xxxx
            )
BOARD OF EDUCATION FOR CORNELL ) Hon. Judge
SCHOOL DISTRICT, Randall Vincent,  )
in his individual and official capacities,  )
and the Board of Education for Cornell School Dist. ) **JURY DEMANDED**
426 as indemnitor,      )
            )
    Defendants.    )

## COMPLAINT

   BAILEY CONROY ("Plaintiff" or "Conroy"), by and through her undersigned counsel,

Gianna R. Scatchell, Esq. and Nicollette M. Haines of DISPARTI LAW GROUP, P.A., complains

as follows against Defendants BOARD OF EDUCATION FOR CORNELL SCHOOL DISTRICT

("CORNELL") as a Defendant and indemnitor and RANDALL VINCENT in his official and

individual capacities as Superintendent for Cornell School District (collectively, hereinafter,

"Defendants") and alleges upon personal knowledge regarding herself and her own acts, and on

belief, regarding all other matters:

## NATURE OF ACTION

1. This action is brought to redress the violations of Plaintiff's rights and for retaliating against

  her for blowing the whistle on various violations of state and federal law including financial

  mismanagement, imminent breaches of the school's main entrance locking system, and

  harassment.

2. Defendants responded with a series of retaliatory acts that included stripping her of her responsibilities; cutting off access to her work email and remote login; initiating an internal investigation against her; and ultimately terminating her.

3. These acts of discrimination and retaliation violate Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq., as amended by the Civil Rights Act of 1991 ("Title VII"), and 42 U.S.C. § 1983, both of which prohibit discrimination and retaliation.

4. Plaintiff seeks all remedies including injunctive and declaratory relief, reinstatement, compensatory damages, punitive damages, back pay and front pay, pre-judgment interest, punitive damages, and attorneys' fees and costs for Defendants' violations of her rights.

## JURISDICTION AND VENUE

5. The jurisdiction of this Court is invoked according to 28 U.S.C. §§ 1331, 1343, and 42 U.S.C. § 2000e-5(f)(3).

6. Venue is proper because the unlawful conduct alleged herein was committed within the boundaries of the United States District Court for the Central District of Illinois making venue in this district proper pursuant to 28 U.S.C. § 1391(b).

7. Supplemental jurisdiction exists over the state law claims count pursuant to 28 U.S.C. § 1367 because the state law count is so related to the other claims in this action to form part of the same case or controversy.

## PARTIES

8. Plaintiff is a resident of the State of Illinois. She is a bookkeeper by profession, and was employed by the Cornell School District (hereinafter "Defendant District") from July 15, 2021 until her retaliatory discharge on December 9, 2021.

9. Defendant District is a consolidated public school district in the State of Illinois.

10. Defendant Cornell is governed by a Board of Trustees which delegates authority and responsibilities to the superintendent, including the individual Defendant Vincent in this case.

11. Defendant Cornell Board of Education is a local government unit with indemnification obligations for wrongful acts committed by its officials. *See* 745 ILCS § 10/1-202 and § 9-102. It is sued in its capacity as indemnitor only.

12. At all times relevant, Defendant Randall Vincent was the interim superintendent of Cornell and has been an educator for 44 years. Vincent spent 36 years in administrative positions. Vincent is a final policymaker and at all times relevant served as the interim superintendent for Cornell Office. Vincent engaged in the conduct complained of while acting under the color of law. He is sued in her official and individual capacities.

13. At all times relevant to this complaint, Defendant Cornell was and is an "employer," within the meaning of Title VII, Americans with Disability Act, 42 U.S.C. § 1983 and § 1983, and the relevant state law claims.

## ADMINISTRATIVE PREREQUISITES

14. Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") claiming age discrimination based upon the factual allegations charged against Defendants in this Complaint and is currently awaiting a right-to-sue letter. The same Charge has been cross-filed with the Illinois Department of Human Rights ("IDHR"). Plaintiff requests that Count 2 (add) and Count 3 (add) be stayed pending receipt of right-to-sue letters from the EEOC and IDHR. *See* Exhibit 1.

15. On November 22, 2021, Plaintiff timely filed her administrative charges against Defendant with the Equal Employment Opportunity Commission ("EEOC") asserting various acts of discrimination and retaliation based on Plaintiff taking medical leave after being berated by an

angry resident that gained access to the school through the main entrance's faulty locking system and also in retaliation for filing a police report and for reporting the District's financial mismanagement, overspending, and Board of Trustees' conflicts of interest. Plaintiff filed an amended EEOC charge based on her unlawful termination.

16. Plaintiff has exhausted her administrative remedies as to Counts 1 and 2 and satisfied all jurisdictional prerequisites for filing suit.

## **FACTS COMMON TO ALL COUNTS**

17. Plaintiff repeats and re-alleges all previous paragraphs of this complaint.

### **Plaintiff's Employment History**

18. The Plaintiff possesses a Bachelor of Science in Business Administration, a Master of Business Administration, a Master of Arts in Teaching, and a Master of Arts in Education Leadership.

19. On or about July 2021, Defendant's former superintendent recruited Conroy to be a bookkeeper and audit their current financial situation.

20. At the time of her hiring, Conroy had extensive experience in the public school sector working in bookkeeping and won awards for implementing accounting software at a different public grade school.

21. Plaintiff's duties as an executive assistant to the superintendent, which included human resources management, attending school board meetings as the Board secretary, running payroll, purchasing orders, expenditure reports for grants, helping enforce the budget by entering it into the system, bank reconciliations, and work with the superintendent to make sure the school stayed within budget,

22. Defendant Cornell never provided Conroy with a written agreement with her contract terms as is required by Cornell's policy.

4

23. Plaintiff also was tasked with cafeteria work as the cook, which was unrelated to her position.

24. Plaintiff's additional job duties regularly required her to work different hours than her normal position. Conroy was not compensated for this additional duty, which impacted her ability to complete her other purported job duties.

25. During her time at Cornell, Plaintiff received satisfactory or positive feedback from the former superintendent and the interim superintendent.

26. At all times relevant to this Complaint, Plaintiff met Defendant's legitimate expectations of employment.

### Conroy Reports Financial Mismanagement and Improper Spending by Cornell

27. Conroy alerted the Superintendent, the Board, ISBE (outside agency), and the Regional Superintendent (outside agency) of various problems of school security issues, financial mismanagement, and violations of state and federal law including:

    a) Paying the former bookkeeper nearly $13,000 for vacation days and sick time that were improperly allowed to accrue.

    b) Routinely overpaying employees by allowing them to illegally double-dip. For example, an employee was paid over $3,500.00 for being a substitute teacher without having the proper substitute teacher certificate while she was also being paid by the district as a paraprofessional.

    c) Having several versions of an alleged budget for the District, while adopting none of them.

    d) Modifying the budget without Board approval for at least 6 years.

    e) Running payroll and processing accounts payable "runs" under Conroy's name while she was on leave.

28. On September 10, 2021, Conroy also filed a police report against the former bookkeeper for embezzlement.

29. Vincent conceded that the prior bookkeeper "received a payout that she was not entitled to and that the disbursement was against Board policy." The employee was never reprimanded, arrested, or forced to reimburse the improperly disbursed funds. Her husband serves on the Board.

30. Conroy's job was further hampered by inconsistencies with the salary schedule matrix on different collective bargaining agreements or not having signed copies available. Conroy also did not have authority regarding the amounts paid to substitute teachers because that is a Board decision.

### Conroy Reports Breaches to the School's Main Entrance Doors

31. From at least July 2021 to at least December 9, 2021, Cornell's doors to the main entrance failed to lock properly.

32. The backdrop to this matter arises in part from the malfunctioning locking system of Cornell's main entrance doors.

33. Conroy alerted school officials and the Board about the faulty locking system in August 2021.

34. The purpose of an emergency door lock system of the main entrance prevents unauthorized access to the school.

35. Given the rise of mass school shootings[1], securing doors has long been the focus of school safety drills, and provides a school with the first line of defense against a mass shooting.

---

[1]Mass shootings have doubled in the past four years. In 2018 there were 336 mass shootings,417 in 2019, 610 in 2020, and 691 in 2021. See, https://www.gunviolencearchive.org/past-tolls; see also, https://everytownresearch.org/maps/mass-shootings-in-america. The National Center for Education Statistics, a research arm of the U.S. Department of Education, reported a total of93 school shootings with casualties at public and private elementary and secondary schools during the 2020/2021 school year. Only eleven such shooting occurred in 2009.https://nces.ed.gov/whatsnew/press_releases/06_28_2022.asp

36. For example, the Uvalde Texas school massacre began after an 18-year-old gunman entered the school through an open door and accessed a classroom that had a faulty lock where the gunman killed 19 children and two teachers.

37. Even though such protocols and standards about mass school shootings were well in place as of August 2021, Defendant Cornell was woefully in breach of these well-established protocols to properly maintain the first line of defense of school safety: preventing unwanted or unauthorized visitors from improperly accessing the school.

38. On September 21, 2021, a visitor accessed the school through the faulty main entrance where he bypassed the sign-in process. The visitor then approached the former superintendent and Conroy. The visitor became aggressive and hostile toward them.

39. Conroy and the former superintendent filed a police report regarding this incident and both reported the same to the Board.

40. Right after Bailey reported this incident, Conroy's name was removed from its official letterhead and Vincent demanded that Conroy return her keys to the building and her computer and placed her on administrative leave.

41. On September 27, 2021, Conroy met with Vincent at a neutral place where Vincent tried to convince Conroy to stay at the district and that he would not allow such a security breach to happen "under his watch."

42. Per state law and Cornell's policy, all security incidents at a school must be investigated regardless of whether a physical injury has occurred.

43. On belief, Defendants Cornell and Vincent failed to investigate Conroy's complaint.

44. As Conroy's employer, Cornell must provide a safe workplace to her and other employees.

45. Conroy suffers from anxiety, and this incident only exacerbated her symptoms so much so that her doctor ordered her to be off work.

46. Following this security breach and until October 15, 2021, Conroy used her sick time and provided the school with a copy of her doctor's "no work" order.

47. Throughout her sick leave, Conroy emailed Vincent and other administrators to discuss her concerns regarding school safety, the mismanaged books, and her return to work.

48. While on leave, Marilea Groves, the Board president, emailed Bailey to inform her that she was not terminated and was to come back to work on September 28, 2021, or she was to let the board know that she was resigning by September 29, 2021.

49. Groves also asked Conroy to produce copies of work that she needed to do while she was on leave. Conroy obliged and provided such documentation.

50. On Sunday, October 17, 2021, Vincent ordered Conroy to return to work by October 18, 2021 at 9:00 a.m. Vincent also confirmed that the malfunctioning entrance door locks had not been fixed and "w[ould] not change until [Cornell] can get contractor bids and complete the renovation which may take months as [Cornell] would work around student attendance."

51. Conroy reasonably requested an accommodation to allow her to continue working while Cornell repaired the school's faulty locking system.

52. Conroy's predecessors were allowed to work remotely.

53. Inexplicably, Vincent refused that request by stating that: "[t]here is no option for working remotely."

54. Vincent later claimed that even though the faulty locking system had not been repaired, he employed a process to rectify the issue, which was "when an employee walked past the door and noticed that the door was not latched, he or she needed to pull it shut."

55. Vincent further claimed that the delay to repair the faulty locking system was due to supply issues and that he did not want to repair the doors during a time when it could disrupt the students.

56. Conroy also expressed concerns about other school security matters including:

   a) That it allowed several non-personnel to have keys to access the school without having a system to track who maintained keys and how many keys were given to non-personnel;

   b) That an employee was administering medication to students without having the proper doctor authorizations on file.

57. Conroy reported these other security breaches to the former Superintendent and Board members.

58. On belief, at the time that Conroy was unlawfully fired, Defendants had not properly investigated and/or rectified these issues because some of the Board members' relatives and friends possessed keys to the school that were unaccounted for.

## Cornell's Investigation of Conroy

59. On belief, on or about October 2021, the former superintendent was forced to resign from the School for making similar complaints about the financial management of Cornell.

60. The former superintendent recruited Conroy to help fix the books for Cornell since it was a known fact that the financial books were "a mess."

61. On October 18, 2021, Vincent solicited peer complaints from Conroy's colleagues and requested them to submit any complaints they had against Conroy. Vincent's conduct created a hostile and abusive work environment during its investigation of Plaintiff.

62. Vincent only requested these "peer complaints" of Conroy the day after Conroy's attorney informed Defendants' attorney that she was uncomfortable with returning to Cornell as long as the main door lock was not functioning properly.

63. Upon information and belief, Vincent solicited complaints about Conroy and encouraged individuals to file complaints because there is power in numbers.

64. The Defendants took a similar position to the former superintendent, who also raised similar complaints by inevitably forcing her out.

65. Vincent's reasons for terminating Conroy were frivolous, irrelevant, or petty. For example, several of the alleged performance defects contain vague accusations without dates, times, witnesses, or circumstances surrounding the purported incidents. A true and correct copy of the third party, unsubstantiated complaints are attached hereto as Exhibit 2.

66. Vincent further cited an unnamed employee's irrelevant and baseless speculation that Conroy is not finishing up her special education degree unless she is paid more even though this degree is not required or necessary for her position.

67. Defendant did not provide Plaintiff with advanced notice of any purported investigation, schedule a Corrective Action Meeting, or allow Conroy to respond to such allegations.

68. Vincent's notification of investigation indicated a list of allegations from unidentified sources, offering virtually no detail or context.

69. Vincent never investigated these vague allegations, nor did he attempt to meet with Plaintiff to respond.

70. Instead, the Board summoned Plaintiff to a "termination proceeding."

71. Vincent's recommendation for termination was riddled with inconsistent reasons for recommending termination including:

a) Vincent did not solicit complaints from Bailey's peers until after filed the two police reports and continued complaining about the school's faulty locking system;

b) Vincent never requested peer complaints be filed against another employee in his 44 years as an educator except in Conroy's case;

c) Vincent never directly spoke with Conroy about these alleged complaints nor did he interview any of Conroy's purported accusers;

d) Vincent only asked for input from the staff, he conducted no independent corroboration of the accusations.

e) Vincent relied "on the magnitude of the comments, they had a lot of credibility, they had no reason not to tell him the truth."

72. Vincent recommended that Conroy be terminated because in "[his] 44 years of education he never saw a situation who only worked 9 weeks upset the culture, staff, and community as much as Conroy."

73. Further casting doubt on Vincent's motives, Vincent never worked directly with Conroy as she was on leave when Vincent became the Interim Superintendent, and Conroy's alleged extensive list of violations was never made an issue of the laundry list of allegations against Conroy until the day after she flagged another problem with Cornell's operations.

74. These assertions had absolutely no basis in fact and were not presented to Plaintiff to allow her to respond.

75. The so-called investigation was not done in good faith.

76. Defendant's investigation of Plaintiff was intrusive to Plaintiff's privacy and created hostility and embarrassment for Plaintiff among her colleagues and supervisors at Cornell School District and to other prospective employers by asking her peers to file complaints against her.

**77.** Vincent republished such false statements to the Board and others in reckless disregard of the truth of the purported complaints filed by Conroy's colleagues.

**The Reasons Given for Plaintiff's Termination Were Pretextual and Discriminatory**

**78.** Conroy has provided ample proof that Defendant Vincent's proffered nondiscriminatory reasons for recommending termination were riddled with factual disputes that support a causal connection betweenConroy's complaints, her subsequent leave, and her termination.

**79.** Additional concerns center around purported "lies" about Zoom meetings and a broken copy machine, which again calls into question the legitimacy of these so-called complaints.

**80.** Conroy was asked to work in the kitchen on several mornings, which provides a reasonable explanation on what time she arrived for her job or the outfit that she wore.

**81.** Upon information and belief, several Board members have close professional and personal ties with some of the individuals that Conroy reported, including that one Board member is married to the employee that Conroy filed the police report against.

**82.** Conroy was summoned to appear at a December 9, 2021, disciplinary hearing before the Board.

**83.** The Board never called Conroy as a witness and instead presented various vague allegations that were not backed up by any reasonable investigation, names of accusers, or dates or specific examples of the purported violations.

**84.** Defendants never explained how Plaintiff had violated Cornell's policies, nor did they provide Conroy with the purported policies that she violated.

**85.** As to the other allegations, most were demonstrably false or exaggerated.

**86.** The Board's findings determination based its conclusion of a policy violation in part on various unidentified accounts of approximately nine employees, seven of whom Conroy had reported for violations of Cornell policy or state or federal laws. Accordingly, nearly every individual

had a motive to file a complaint against Conroy. Such accusations were embellished if not outright fabrications.

### Board's Termination Proceedings of Conroy

**87.** On December 9, 2021, the Board accepted Defendant Vincent's recommendation and terminated Conroy's employment effective immediately.

**88.** The reasons given for Plaintiff's termination were pretextual, discriminatory, and admittedly not supported by Vincent's inadequate "investigation."

**89.** On belief, Defendants terminated Conroy because she reported several issues with financial mismanagement and safety concerns.

**90.** Conroy's termination was a foregone conclusion as one of the Board members stated that "this won't take long" as the Board went into closed session to deliberate Conroy's employment.

### COUNT I – TITLE VII DISABILITY DISCRIMINATION
(Plaintiff v. Defendant Cornell)

**91.** Plaintiff re-alleges and incorporates by reference the aforementioned paragraphs of this Complaint as if those paragraphs were fully set forth herein.

**92.** At all times relevant, Defendant Cornell has been an Employer within the meaning of Title VII of the Civil Rights Act, 42 U.S.C. 2000e, et seq., in that it has been in an industry affecting commerce employing fifteen or more employees for each working day for each of twenty or more calendar weeks in the year prior to this Complaint being filed.

**93.** At all times relevant, Conroy has been an employee within the meaning of Title VII.

**94.** At all times relevant, Conroy engaged in conduct protected by Title VII, including, but not limited to, exercising her right to complain of financial mismanagement and discrepancies to the ISBE and regional superintendent under the First Amendment when they terminated her employment after she made complaints questioning the financial and security practices of

Defendant Cornell, which were not part of her job duties. She was serving in the capacity as a citizen.

95. The discriminatory motive and actions of the individuals who complained about Plaintiff influenced Defendant and resulted in Plaintiff's termination, which constitutes employment discrimination in violation of Title VII.

96. The discriminatory motive and actions of the individuals investigated Plaintiff influenced Defendant and resulted in Plaintiff's termination, which constitutes employment discrimination in violation of Title VII.

97. Defendant Board and Vincent were aware of Plaintiff's generalized anxiety disability and her need to take medication to treat it.

98. Defendants were also on notice that Conroy was on leave due to such disability, yet they still continued to launch various pretextual initiatives to ultimately set-up Conroy's termination.

99. Defendant Cornell violated Title VII and retaliated against Plaintiff when it took adverse action against Plaintiff by terminating her employment because she complained of and reported safety concerns and potential violations of state and federal law.

100. Defendants used Plaintiff's disability as pretext to terminate her by stating that part of the reason for Vincent recommending Conroy's termination was inextricably based on her disability by alleging that she had "several meltdowns" and would need to "take a pill" and "smoke a cigarette to calm down."

101. The action taken by Defendant against Plaintiff would deter a person of ordinary firmness from continuing to engage in reporting acts of discrimination.

102. By reason of the foregoing, Defendant has violated 42 U.S.C. § 2000e et. seq.

WHEREFORE, Plaintiff prays for judgment against Defendant in the form of: a) a finding that Defendant has injured Plaintiff in violation of 42 U.S.C. §§ 2000e et 36 seq.; b) reinstatement of Plaintiff in her position of Bookkeeper for Cornell School District; c) an injunction prohibiting Defendant from engaging in future acts of discrimination or retaliation against Plaintiff; d) any other appropriate injunctive relief; e) back pay and the value of benefits Plaintiff would have received from the date Plaintiff was terminated through present, including any benefits were available to her prior to termination; f) front pay, any additional lost wages, compensatory damages for pecuniary and non- pecuniary losses, including humiliation and emotional and physical distress, prejudgment interest, and post-judgment interest; g) costs and reasonable attorneys' fees; h) interest; i) any further relief to which Plaintiff is entitled under 42 U.S.C. §§ 2000e et seq.; and j) such other and further relief as this Court deems proper and just.

### COUNT II – TITLE VII DISABILITY RETALIATION
(Plaintiff v. Defendant Cornell)

**103.** Plaintiff re-alleges and incorporates by reference the aforementioned paragraphs of this Complaint as if those paragraphs were fully set forth herein.

**104.** Conroy has suffered a severe and pervasive hostile work environment by the actions stated in the other paragraphs of this Complaint, including being put on leave based on trumped-up, false, and selectively targeted allegations, failing to investigate her allegations about questionable security and financial practices meaningfully, and ultimately terminating her.

**105.** Each time Plaintiff filed a police report or engaged in other protected conduct, Defendants retaliated against her as alleged above.

**106.** Plaintiff filed an EEOC charge that her attorney Emailed to the Defendants' counsels before her being terminated and losing access to her various work programs.

**107.** This was in direct retaliation for Plaintiff's aforementioned protected activities.

108.     As a direct and proximate result of Defendants' unlawful actions, Conroy has suffered economic and non-economic damages, including lost pay, benefits, promotional opportunities, reputational damage, emotional distress, and general compensatory damages, all resulting from Defendant Cornell's unlawful actions.

109.     Defendant Cornell acted willfully and in bad faith in retaliating against Plaintiff by failing to investigate her claims of discrimination and harassment when she reasonably reported and opposed employment practices made illegal by Title VII.

110.     Defendant Cornell acted willfully and in bad faith in retaliating against Plaintiff by terminating her employment when she reasonably reported and opposed employment practices made illegal by Title VII.

111.     By reason of the foregoing, Defendant has violated 42 U.S.C. § 2000e et. seq.

WHEREFORE, Plaintiff, Bailey Conroy, prays for judgment against Defendant in the form of: a) a finding that Defendant has injured Plaintiff in violation of 42 U.S.C. § 2000e et seq.; b) reinstatement of Plaintiff in her position of Bookkeeper for Cornell School District; c) an injunction prohibiting Defendant from engaging in future acts of discrimination or retaliation against Plaintiff; d) any other appropriate injunctive relief; e) back pay and the value of benefits Plaintiff would have received from the date Plaintiff was terminated through present, including any benefits were available to her prior to termination; f) front pay, any additional lost wages, compensatory damages for pecuniary and non- pecuniary losses, including humiliation and emotional and physical distress, prejudgment interest, and post-judgment interest; g) costs and reasonable attorneys' fees; h) interest; i) any further relief to which Plaintiff is entitled under 42 U.S.C. § 2000e et seq.; and such other and further relief as this Court deems proper and just.

### COUNT III - VIOLATION OF THE FIRST AND FOURTEENTH AMENDMENTS
(Plaintiff v. Defendant Cornell)

112.    Plaintiff re-alleges and incorporates by reference the aforementioned paragraphs of this Complaint as if those paragraphs were fully set forth herein.

113.    At all times relevant hereto, Defendant Cornell was a final policymaker and at all times acted under color of law.

114.    Defendant's acts described above demonstrate a pattern and practice of retaliating against employees who speak out against financial mismanagement.

115.    In particular, when Plaintiff reported and participated in the external investigation into the financial mismanagement to the Regional Superintendent and ISBE, Plaintiff was exercising her First Amendment rights and reporting potential misconduct or corruption of government officials.

116.    Defendants intentionally subjected Conroy to unequal and retaliatory treatment by writing phony disciplinary reports, suspending her, defaming her, and unlawfully terminating her, in violation of the First Amendment and treating her in an overall disparate manner.

117.    Defendant Cornell created a policy, practice, and custom and took express acts that had the force and effect of official policy to retaliate against Conroy when she engaged in protected activities when Conroy complained that the actions of Vincent and others created a hostile work environment in retaliation as alleged above.

118.    Defendants retaliated against Conroy in violation of her First Amendment rights when she was written up and ultimately fired after she reported what she believed to be improper actions by the District and various employees, former employees, and Board members. The Seventh Circuit has repeatedly held that "speech alleging government corruption and malfeasance is of public concern in its substance." *Spiegla v. Hull*, 371 F.3d 928, 937 (7th Cir. 2004) (collecting cases).

119.    The reasons provided by the Defendants for the Plaintiff's termination were unfounded and

merely a pretext. Through the actions of its officials, agents, and employees, the Defendants

engaged in adverse actions against the Plaintiff that woul d likely deter a reasonable employee

from reporting or supporting allegations of harassment or retaliation.

120.    At all times, Defendant, by its officials, agents, and employees, was aware of each

Plaintiff's protected activities and oppositional conduct based on the foregoing allegations.

121.    The aforementioned acts of the Defendants were reckless, willful, wanton, malicious,

oppressive, and in callous disregard and indifference to Plaintiff.

122.    Due to the aforementioned policies implemented by the Defendant, Cornell, the Plaintiff

experienced considerable injury and harm resulting from the deprivation of her rights, as

protected under the First Amendment. The inflicted damages upon the Plaintiff include, but

are not limited to, loss of wages, loss of benefits, emotional distress, hindered career

progression, pain and suffering, humiliation, and embarrassment.

WHEREFORE, Plaintiff prays for judgment against Defendants in the form of (a) a finding that

Defendant has injured Plaintiff in violation of 42 U.S.C. § 1983; (b) All wages and benefits

plaintiff would have received but for the First Amendment violations, including but not limited

to back pay, front pay, pre-judgment interest, and reinstatement into his position; (c)

Compensatory damages in an amount to be determined at trial to compensate Plaintiff for the

humiliation, anguish, and emotional distress caused by defendants' conduct; (d) A permanent

injunction enjoining defendants from engaging in the practices complained of herein; (e) A

permanent injunction requiring that defendants adopt employment practices and policies in

accord with and in conformity to the requirements of 42 U.S.C. § 1983; and (f) A declaratory

judgment that Defendants' actions violate 42 U.S.C. § 1983.

WHEREFORE, Plaintiff prays for judgment against Defendant in the form of:

a) a finding that Defendant has injured Plaintiff in violation of 42 U.S.C. § 1983; b) reinstatement of Plaintiff in her position of Bookkeeper for Cornell School District; c) an injunction prohibiting Defendant from engaging in future acts of discrimination or retaliation against Plaintiff; d) any other appropriate injunctive relief; e) back pay and the value of benefits Plaintiff would have received from the date Plaintiff was terminated through present, including any benefits were available to her prior to termination; f) front pay, any additional lost wages, compensatory damages for pecuniary and non-pecuniary losses, including humiliation and emotional and physical distress, prejudgment interest, and post-judgment interest; g) costs and reasonable attorneys' fees;

h) interest; i) any further relief to which Plaintiff is entitled under 42 U.S.C. § 1983; and j) such other and further relief as this Court deems proper and just.

### COUNT IV - ILLINOIS WHISTLEBLOWER ACT 740 ILCS 174
(Plaintiff v. all Defendants)

123.    Plaintiff re-alleges and incorporates by reference the aforementioned paragraphs of this Complaint as if those paragraphs were fully set forth herein.

124.    The Illinois Whistleblower Act prohibits retaliation for reporting misconduct, including public corruption or wrongdoing.

125.    Plaintiff complained to various employees employed by Defendant Cornell including the legal department and comptroller's department about the ongoing financial mismanagement and security issues. *See 740 ILCS 174/15(b)*. Plaintiff's complaints went unanswered.

126.    Defendants retaliated against Plaintiff as described in the preceding paragraphs for disclosing Vincent's unlawful conduct.

127.    When Defendants subjected Plaintiff to the various materially adverse employment actions, they knew that Conroy had complained to other independent agencies outside of her

usual employment. See Spalding v. City of Chicago, 186 F. Supp. 3d 884, 918 (N.D. Ill. 2016) (denying motion for summary judgment where a reasonable jury could infer that the defendant officers retaliated against Conroy for their whistleblowing on police corruption even though the defendants denied knowing that Plaintiff were whistleblowers).

128.    After Plaintiff complained, he alleges that Defendants retaliated against her by the actions as described herein, including subjecting her to a witch hunt of having the interim superintendent request her subordinates to initiate complaints against Conroy, stripping her of her responsibilities and employee access, and ultimately terminating her all constitute materially adverse employment actions that altered the terms and conditions of his employment.

129.    Defendant Cornell and its employees were prohibited from retaliating against Plaintiff for reporting clear mandates of public policy, such as enforcing state and federal civil rights statutes and laws and the policy of furthering investigation of a hostile work environment.

130.    When Defendants subjected Plaintiff to the various materially adverse employment actions, they were aware that she had reported this misconduct to agencies outside of her normal employment. *See Spalding v. City of Chicago*, 186 F. Supp. 3d 884, 918 (N.D. Ill. 2016).

131.    After Plaintiff complained, she alleges that Defendants retaliated against her by the actions as described herein, including: harassing and demeaning her, stripping away her duties, subjecting her to trumped-up write-ups, and ultimately terminating her, which all constitute materially adverse employment actions that altered the terms and conditions of her employment.

132. Conroy had reasonable cause to believe that the information disclosed violated state or federal law, rule, or regulation including mismanagement of public funds, financial irregularities, and breaches to the school's first line of defense to protect against unwanted visitors.

133. Each Defendant made, took part in, assisted in, and/or participated in the decision to retaliate against Plaintiff.

134. Plaintiff's termination was done in retaliation for her protected conduct as described above.

135. Conroy was subjected to retaliation in violation of rights guaranteed to her by the Illinois Whistleblower Act, 740 ILCS § 174/15, and she has suffered substantial losses including job loss, salary and benefits losses, fringe benefits losses, emotional distress and mental pain and suffering, and loss of a career in law enforcement.

WHEREFORE, for the foregoing reasons, Plaintiff, Bailey Conroy, requests that this Court enter judgment in her favor and against Defendants in an amount to be proved at trial, including (1) reinstatement with the same seniority status that Plaintiff would have had, but for the termination; (2) back pay, with interest; and (3) compensation for any damages, including litigation costs and reasonable attorney's fees." *740 ILCS 174/30*.

## <u>COUNT V – DEFAMATION PER SE (REPUBLICATION)</u>

(Plaintiff v. Defendant Vincent)

136. Plaintiff restates, realleges, and incorporates by references all other Paragraphs of this Complaint as if fully restated herein.

137. Vincent is the interim superintendent for Defendant Cornell.

138. Vincent solicited complaints from Conroy's colleagues. When Vincent received such unsubstantiated complaints, he had an obligation to investigate or at least interview the complainants before pursuing Conroy's termination.

**139.**   Vincent failed even to conduct a cursory investigation and took each complaint at face value.

**140.**   Vincent's report republished both various unknown individuals' defamatory statements.

**141.**   The gist of Vincent's report is that Conroy committed a myriad of unsubstantiated, irrelevant, or petty complaints.

**142.**   The statements in Vincent's Report may reasonably be read as either imputing a want of integrity in employment or prejudicing Conroy in her profession.

**143.**   Vincent had an obligation to investigate the allegations made by Conroy's colleagues before republishing such false statements to the Board or Conroy's prospective employers.

**144.**   Vincent's republications (as set forth above) were deliberate, negligent, and or reckless and were published without any reasonable independent investigation to substantiate the statements outside of the interviews noted in his report.

**145.**   Vincent's report neither advances an interest of social importance nor is a communication made to those who would necessarily require it.

**146.**   Vincent's republications were not subject to any privilege.

**147.**   In fact, Vincent lost any privilege when he published the contents of that report beyond those who would necessarily be entitled to it. *Thomas v. Petrulis*, 125 Ill.App.3d 415, 423, 80 Ill.Dec. 713, 465 N.E.2d 1059, 1064 (1984)(A properly filed EEOC charge lost privilege when the statements contained within it were published to persons beyond those who would necessarily require the communication).

**148.**   As a proximate result of Vincent's republications, Conroy was terminated, was not hired by numerous agencies, suffered actual, consequential, and incidental financial losses, including without limitation, the intangible loss of employment-related opportunities in her field and

damage to her professional reputation, all in an amount subject to proof at the time of trial. Plaintiff claims such amounts as damages pursuant to Illinois statute and/or any other provision of law providing for prejudgment interest.

WHEREFORE, the foregoing reasons, Plaintiff, Bailey Conroy seeks entry of judgment in her favor and against Vincent, and all available relief against in her favor and against Vincent, including the appropriate presumed, compensatory, consequential, and special damages, and costs in an amount to exceed $50,000.00 or such greater sum as shall be found in favor of Plaintiff and for all such other relief to which she is entitled, and the Court deems just and proper.

## COUNT VI RETALIATORY DISCHARGE
(Plaintiff v. Defendants)

**149.** Defendant Cornell is obligated to assume financial responsibility for the actions committed by its officials or employees.

**150.** As alleged above, Conroy's discharge was based her protected activity, which contravenes Cornelly's policies, state law, federal law, and public policy.

WHEREFORE, for the foregoing reasons, Plaintiff, requests that this Court enter judgment in her favor, and against Defendants and that this Court enter an order requiring Defendant Cornell to indemnify any other defendants in this matter.

## COUNT VII– INDEMNIFICATION
(Plaintiff v. Defendant Cornell)

**151.** Defendant Cornell is obligated to assume financial responsibility for the actions committed by its officials or employees.

WHEREFORE, for the foregoing reasons, Plaintiff, requests that this Court enter judgment in her favor, and against Defendant Cornell and that this Court enter an order requiring Defendant Cornell to indemnify any other defendants in this matter.

## COMMON PRAYER FOR RELIEF

WHEREFORE, and that there is sought, Plaintiff, prays that this Honorable Court:

a) Conduct a mediated settlement conference or to refer the case to its court-annexed mediation program to assist the parties to bring about a settlement of this case;

b) Grant court costs and reasonable attorneys' fees; and

c) Grant such additional relief as the Court deems just and proper under the circumstances.

## JURY DEMAND

**152.  JURY DEMANDED ON ALL COUNTS**

                                        Respectfully submitted,
                                        Bailey Conroy
                        By: _____
                                        Gianna Scatchell, ESQ.
                                        One of Plaintiff's attorneys


July 10, 2023

Gianna Scatchell, Esq.
DISPARTI LAW GROUP, P.A.
121 W. Wacker Drive, Suite 2300
Chicago, Illinois 60601
E: gia@dispartilaw.com


                                        */s/ Gianna R. Scatchell*
                                        _____