# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | | |
|---|---|---|
| BAILEY CONROY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.  1:23-cv-1315 |
| | ) | |
| BOARD OF EDUCATION FOR | ) | |
| CORNELL COMMUNITY | ) | |
| CONSOLIDATED SCHOOL DISTRICT | ) | |
| NO. 426; RANDALL VINCENT, in his | ) | |
| individual and official capacities; and the | ) | |
| Board of Education for Cornell School | ) | |
| District 426 as indemnitor, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER & OPINION

This matter is before the Court on Defendants' Motion to Dismiss Plaintiff's First Amended Complaint ("Complaint") for failure to state a claim upon which relief may be granted. (Doc. 31). Defendants have filed a Memorandum (doc. 32) in support of their Motion, and Plaintiff has filed a Response and Memorandum in opposition (doc. 33). The Motion is fully briefed and ripe for review. For the following reasons, Defendants' Motion is denied as to Counts I, II, III, and V and granted as to Count IV.

## BACKGROUND[1]

Plaintiff is a former employee of the Cornell Community Consolidated School District No. 426 (the "District" or "Cornell").[2] Plaintiff was hired in July 2021 by the District's former superintendent as a bookkeeper and to audit the District's current financial situation, and her employment was terminated in December 2021 by Defendant Board of Education for Cornell School District ("the Board") and Defendant Randall Vincent, the interim superintendent at the time of Plaintiff's termination. (Doc. 28 at 4–13). The Board terminated Plaintiff's employment by voting to approve Vincent's recommendation that Plaintiff be terminated. (Doc. 28 at 13). Plaintiff was never provided with a written contract, but her duties included executive assistance to the superintendent, human resources management, attending board meetings as board secretary, running payroll, purchasing orders, providing expenditure reports for grants, enforcing budget, performing bank reconciliation, and acting as a cafeteria cook. (Doc. 28 at 4–5).

During her tenure, Plaintiff reported numerous issues to the superintendent, the Board, local law enforcement, and two outside agencies, the Illinois State Board of Education and the Regional Superintendent. These issues included problems with school security, financial mismanagement, violations of state and federal laws, overpaying a former bookkeeper, allowing employees to double dip, modifying payroll

---

[1] Consistent with the standard the Court must apply at the motion-to-dismiss stage, the narrative in this section is based on Plaintiff's Amended Complaint (doc. 28); it does not represent a finding of the Court as to the truth of her allegations.
[2] The District is composed of a single elementary (kindergarten through eighth grade) school. *See* www.isbe.net (last visited July 9, 2024).

without Board approval, and processing payroll under Plaintiff's name while she was on leave. (Doc. 28 at 5). On September 10, 2021, Plaintiff filed a police report against the District's former bookkeeper for embezzlement. (Doc. 28 at 6).

On September 21, 2021, a visitor accessed the school through the faulty main entrance doors and was aggressive and hostile towards Plaintiff and the District's then-superintendent (Doc. 28 at 7). Plaintiff and the then-superintendent reported the incident to the police. Immediately after the incident, Board President Marilea Groves placed Plaintiff on administrative leave and removed her name from the school's letterhead. *Id.*

Plaintiff suffers from anxiety, which was exacerbated by the incident, leading her doctor to order her off work. (Doc. 28 at 8). Following the security breach, Plaintiff worked from home using her sick time until October 15, 2021. (Doc. 28 at 8). She also provided the Board with a copy of her doctor's "no-work" order. (Doc. 28 at 8). During her leave, Board President Groves emailed Plaintiff, asking her to produce work documents, assuring her that she had not been terminated, and ordering her to return to work or resign by September 29, 2021. (Doc. 28 at 8). On October 17, 2021, Vincent ordered Plaintiff to return to work the following morning, (doc. 28 at 8) at which time Plaintiff requested an accommodation to continue working remotely until the school's faulty system was repaired and again provided a doctor's note. (Doc. 28 at 8).  Plaintiff's predecessors were allowed to work remotely, but Vincent denied her request, stating that "[t]here is no option for working remotely." (Doc. 28 at 9).

On October 18, 2021, Vincent solicited peer complaints against Plaintiff for allegedly violating District policies and republished these complaints to the Board. (Doc. 28 at 10–13). Plaintiff was summoned before the Board based on these allegations but was not called as a witness, provided with advance notice of the investigation, or allowed to respond to the allegations. (Doc. 28 at 10–12). The Board accepted Vincent's recommendation and terminated Plaintiff's employment on December 9, 2021. (Doc. 28 at 13). Plaintiff contends that the investigation and termination proceedings were fraught with procedural inconsistencies, including unsubstantiated accounts of Plaintiff's alleged policy violations from employees she had in turn reported for violating state and federal laws, performance accusations without specifics, and a lack of independent corroboration by Vincent. (Doc. 28 at 10–13).

Plaintiff exhausted her administrative remedies by filing a charge with the Equal Employment Opportunity Commission ("EEOC") on November 22, 2021, alleging various acts of discrimination and retaliation. (Doc. 28 at 3). Plaintiff further filed an amended EEOC charge on her termination. (Doc. 28 at 4). In her Complaint, Plaintiff brings five claims against Defendants. Counts I and II are brought under Title I of the Americans with Disabilities Act of 1990 ("ADA") against Defendant Board for disability discrimination and retaliation. Count III is brought against both Defendant Board and Defendant Vincent in his official and individual capacities under 42 U.S.C. § 1983 for deprivation of her First Amendment rights. Count IV is brought against Defendant Vincent under 42 U.S.C. §1983 for deprivation of

Plaintiff's Fourteenth Amendment rights. Count V is a state law indemnification claim against Defendant Board. (Doc. 28 at 3–23). Plaintiff seeks injunctive and declaratory relief, reinstatement, reasonable accommodation for her disability, compensatory and punitive damages, back and front pay, pre-judgment and post-judgment interests, attorney's fees, costs, and state law indemnification in her Complaint. (Doc. 28 at 3–23).

## LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim under the Federal Rules of Civil Procedure 12(b)(6), the complaint must contain "a short and plain statement" of the plaintiff's claim sufficient to plausibly demonstrate entitlement to relief. Fed. R. Civ. P. 8(a); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly,* 550 U.S. at 556).

At this stage, the Court construes the complaint in the light most favorable to the plaintiff, accepting all well-pleaded factual allegations as true and drawing "all reasonable inferences from those facts in favor of the plaintiff." *United States ex rel. Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834, 839 (7th Cir. 2018). However, those statements which are legal conclusions rather than factual allegations are not taken as true. *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir. 2012).

## DISCUSSION

5

## I. Preliminary Matters

### a. Jurisdiction

As an initial matter, the Court must confirm its jurisdiction over the present action. Plaintiff has initiated this suit under two federal statutes: the ADA (42 U.S.C. §§ 12112 to 12117) and 42 U.S.C. § 1983. The specific right of action in this Court is provided under 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1343. Thus, the Court has federal-question jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331.[3]

Plaintiff also asserts an indemnification claim under Illinois state law, pursuant to the Illinois Torts Immunity Act, 745 ILCS § 10/1-102 and § 9-102. This raises the issue of whether this Court may exercise jurisdiction over the related state-law claim. In civil actions where the court has original jurisdiction over at least one federal claim, "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). However, the Court may decline to exercise supplemental jurisdiction under certain circumstances such as novel questions of state law, state claims that "substantially predominate" over federal claims, the district court has dismissed all claims over which it has original jurisdiction or in exceptional circumstance where there are "other compelling reasons." 28 U.S.C. §1367(c).

Here, Plaintiff's state-law indemnification claim arises from the same alleged discrimination, retaliation, and civil-rights infringement claim and is directed

---

[3] Plaintiff also claims Defendants are liable under Title VII, but no individual count mentions Title VII (doc. 28 at 2) and therefore, the Court concludes that it is not a basis for this suit.

against the same defendants. This state-law claim largely depends on the legal and factual findings related to Plaintiff's federal claims. This case does not present any special circumstances that would allow a district court to decline to exercise supplemental jurisdiction. As a result, the Court possesses subject-matter jurisdiction over the entire case.

### b.  Pleading Requirements

The Amended Complaint pleads five counts, with two counts under the Americans with Disabilities Act ("ADA"), two counts pursuant to 42 U.S.C. § 1983, and the fifth count being a state-law claim for indemnification. The factual allegations pleaded in support of the counts are presumably among the 148 separate paragraphs set out seriatim, characterized as "facts common to all counts." However, this form of pleading does not identify or reference the set of facts supporting each claim's legal plausibility. Instead of Plaintiff searching through the 148 factual allegations in the Complaint to identify these supporting facts, Plaintiff has placed this obligation upon the Court. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

A "federal court is not obliged to sift through a complaint to extract some merit when the attorney who drafted it has failed to do so himself." *Stanard v. Nygren*, 568 F.3d 792, 800 (7th Cir. 2011). That court's observation covers this situation, where Plaintiff has pleaded a factual narrative without complying with Rules 8 and 10 of the Federal Rules of Civil Procedure ("FRCP"). Rule 8 requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled

to relief." Rule 10(b) provides that a "party must state its claims . . . in numbered paragraphs, each limited as far as practicable to a single set of circumstances." In addition, "each claim founded on a separate transaction or occurrence . . . must be stated in a separate count."

However, in the interest of the efficient and timely administration of justice, the Court will proceed to consider Defendants' Motion. *See* Rule 1, F.R.C.P.

## II.    Count I: ADA Disability Discrimination

This Count is brought solely against the Defendant Board and the Court assumes that all references to "Defendants" in the relief sought under this claim are to the Defendant Board only, as the ADA only recognizes employer liability and not individual culpability. *See Aku v. Chicago Bd. of Educ.*, 290 F. Supp. 3d 852, 860–61 (N.D. Ill. 2017). Further, an official capacity claim against an employee under the ADA is deemed redundant where the employer is already a defendant. *Id.* at 860. Consequently, any claims for relief in this count against the Defendant Vincent, in his official or personal capacity, are dismissed with prejudice.

Under the ADA, employers are prohibited from discriminating against disabled employees based on their disability. *Dickerson v. Bd. of Trustees of Cmty. Coll. Dist. No. 522*, 657 F.3d 595, 600 (7th Cir. 2011). There are two recognized types of discrimination claims under the ADA: a disparate-treatment claim under 42 U.S.C. § 12112(a), and a failure-to-accommodate claim under 42 U.S.C. § 12112(b)(5)(A). *Scheidler v. Indiana*, 914 F.3d 535, 541 (7th Cir. 2019). A disparate-treatment claim "requires proof that "(1) plaintiff was disabled; (2) plaintiff was qualified to perform essential job functions with or without reasonable accommodation; and (3) the

disability was the 'but for' cause of adverse employment action." *Id*. A failure-to-accommodate claim under the ADA "requires proof that (1) plaintiff was a qualified individual with a disability; (2) defendant knew about the plaintiff's disability; and (3) defendant failed to reasonably accommodate the disability." *Id*. Here, in Count I of her Complaint, Plaintiff alleges that Defendant Board failed to provide reasonable accommodations for Plaintiff's disability. (Doc. 28 at 13–14). Thus, Plaintiff's discrimination claim falls under the failure-to-accommodate theory of recovery under the ADA.

Defendant Board does not dispute Plaintiff's disability or Defendant's awareness of the same. (Doc. 32 at 4–7). Defendant argues however, that Count I should be dismissed because remote work is not a reasonable accommodation and even if it were, Plaintiff failed to adequately plead that she could perform the essential functions of her job with such accommodation. (Doc. 32 at 6–7). Thus, according to Defendant, Plaintiff failed to adequately plead that she is a qualified individual who, with the requested accommodation, could perform the essential functions of her position. (Doc. 32 at 4). Whether or not Plaintiff's presence at the school is required to perform the essential functions of her job as argued by Defendant is an issue to be determined on summary judgment or at trial; at the pleading stage, a reasonable inference of the Complaint's allegations is that it was not, which must be accepted as true.

The ADA defines a "qualified individual" as "an individual who, with or without reasonable accommodation, can perform the essential functions of the

employment position that such individual holds or desires." 42 U.S.C. § 12111(8). To satisfy the qualified-individual requirement for a failure-to-accommodate claim, a plaintiff must show that (1) she met the employer's legitimate selection criteria and (2) needed an accommodation to perform the essential functions of the job at issue. *Stern v. St. Anthony's Health Ctr.*, 788 F.3d 276, 285 (7th Cir. 2015).

Taking the facts as pleaded in the light most favorable to Plaintiff, Plaintiff meets the requisite criteria to hold the position of a bookkeeper and executive assistant and presumably able to perform all the duties of her position at Cornell. Plaintiff pleaded that she holds the requisite degree qualifications and received satisfactory and positive feedback for her performance from both the former superintendent and the interim superintendent, Vincent. (Doc. 28 at 4–5). Plaintiff also sufficiently pleaded facts to show that she requested to work remotely until the District's faulty doors are fixed, as a reasonable accommodation necessary to perform the essential functions of her job, after the work incident exacerbated her generalized anxiety condition. (Doc. 28 at 13–15).

"An employee begins the accommodation process by notifying her employer of her disability." *Hendricks–Robinson v. Excel Corp.,* 154 F.3d 685, 693 (7th Cir.1998). "At that point, an employer's liability is triggered for failure to provide accommodations." *Id.* (citing *Beck v. University of Wis. Bd. of Regents*, 75 F.3d 1130, 1134 (7th Cir.1996)). After an employee discloses a disability to an employer, the ADA requires an employer to "engage with the employee in an 'interactive process' to determine the appropriate accommodation under the circumstances." *E.E.O.C. v.*

*Sears, Roebuck & Co.,* 417 F.3d 789, 805 (7th Cir.2005) (quoting *Gile v. United Airlines, Inc.*, 213 F.3d 365, 373 (7th Cir. 2000)). Here, Plaintiff sufficiently triggered Defendant Board's liability by pleading that Defendant denied her request for accommodation, stating that "[t]here is no option for working remotely." (Doc. 28 at 9).

Defendant relies on a plethora of cases (doc. 32 at 6–7), in support of its assertion that remote work is not a reasonable accommodation under the ADA: *DePaoli v. Abbott Lab'ys*, 140 F.3d 668, 674 (7th Cir. 1998) (the Seventh Circuit affirmed a summary-judgment order because the plaintiff failed to show that she could perform her job's essential functions with the accommodations sought); *Vande Zande v. State of Wis. Dep't of Admin.*, 44 F.3d 538, 544–45 (7th Cir. 1995) (the Seventh Circuit affirmed a summary-judgment order against the plaintiff, holding that subject to changes in technology, an employer is generally not required to accommodate disability by permitting an employee to work full-time at home); *Rauen v. U.S. Tobacco Mfg. Ltd. P'ship*, 319 F.3d 891, 897 (7th Cir. 2003) (the Seventh Circuit affirmed a summary-judgment order, holding that since the plaintiff was able to perform the functions of her job without accommodation, her request for accommodation was unreasonable); *Mobley v. Allstate Ins. Co.*, 531 F.3d 539, 546–47 (7th Cir. 2008) (the Seventh Circuit affirmed a summary-judgment order, holding that the plaintiff's employer was only obligated to provide her with reasonable accommodation, not an accommodation she prefers); *Bilinsky v. Am. Airlines, Inc.*, 928 F.3d 565, 570 (7th Cir. 2019) (the Seventh Circuit affirmed a summary-judgment

order against the plaintiff, holding that although the plaintiff could perform the essential functions of her job from home prior to a company merger, the merger transformed her role to one that required her physical presence); *Kinney v. St. Mary's Health, Inc.*, 76 F.4th 635, 646 (7th Cir. 2023) (the Seventh Circuit affirmed a summary-judgment order against a plaintiff because the accommodation sought by the plaintiff, which required another person to do her job's essential functions, was unreasonable). However, all these cases cited by the Defendant involved ADA claims at the summary-judgment stage and thus addressed evidentiary sufficiency. *See Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 777 (7th Cir. 2022) (warning against drawing on summary judgment opinions to address the pleading requirements in a motion to dismiss for failure to state a claim).

ADA recognizes job restructuring, part-time or modified work schedules, etc., as possible accommodations. *See* 42 USC §12111(9). Further, the essential-function inquiry is a factual question. *Brown v. Smith*, 827 F.3d 609, 613 (7th Cir. 2016). Thus, more evidence is needed to test the efficacy of the remote-working accommodation requested by Plaintiff. *See Torzewski v. COSCO Shipping Lines N. Am. Inc.*, 414 F. Supp. 3d 1143, 1150 (N.D. Ill. 2019) (holding that discovery is needed to test the efficacy of the requested accommodations, which at the pleading stage must be accepted as true); *see also Elzeftawy v. Pernix Grp., Inc.*, 477 F. Supp. 3d 734, 763 (N.D. Ill. 2020) (holding that the plaintiff's allegations that he could perform the position with his disabilities was not a conclusion, but a factual statement of his physical capabilities that must be accepted at the pleading stage). "A motion to

dismiss does not test whether a plaintiff will prevail on the merits but instead whether the plaintiff has properly stated a claim." *Cebuhar v. Dep't of Alcoholism & Substance Abuse*, No. 96-CV-7363, 1997 WL 222871, at *3 (N.D. Ill. Apr. 24, 1997) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)).

At this stage, the allegation in Plaintiff's Complaint that with the requested accommodation, she could perform the essential functions of her job must be accepted as true, and any reasonable inferences must be drawn in Plaintiff's favor. Thus, giving Plaintiff the benefit of all reasonable inferences to which she is entitled at this stage, the Court finds that Count I of the Complaint adequately alleges a prima facie claim under the ADA that Defendant Board failed to reasonably accommodate Plaintiff's disability.

## III.   Count II: ADA Retaliation Claim

As a preliminary point, the Court notes that although the heading of this count identifies Plaintiff as bringing the claim solely against Defendant Board, in ¶ 107 (doc. 28 at 15–16), Plaintiff asserts that the count is against both Defendant Board and Defendant Vincent. The "ADA provides only for employer, not individual, liability." *Aku*, 3d 852 at 860–61 (quoting *Silk v. City of Chi.*, 194 F.3d 788, 797 n.5 (7th Cir. 1999). Additionally, official-capacity claims against public employees under the ADA are generally considered redundant when the employer is already named as a defendant. *Id.* at 860. Therefore, the Court will consider this count as applicable to only Defendant Board. Consequently, any claim under Count II against Vincent in his individual and official capacity is dismissed with prejudice.

13

The ADA prohibits retaliation against an employee who has engaged in a statutorily protected activity. 42 U.S.C. § 12203(a). To establish a prima facie retaliation claim, a plaintiff "must demonstrate that she engaged in a protected activity, that she suffered an adverse action, and that there is a casual connection between the two." *Rowlands v. United Parcel Serv.-Fort Wayne,* 901 F.3d 792, 801 (7th Cir. 2018) (citing *Rodrigo v. Carle Found. Hosp.*, 879 F.3d 236, 243 (7th Cir. 2018)). Defendant Board argues that Plaintiff failed to adequately plead the causal connection between her request for accommodation and the alleged retaliation by Defendant. (doc. 32 at 7–9). A plaintiff may establish causation by direct or circumstantial evidence. *Rowlands,* 901 F.3d at 801. "Circumstantial evidence may include suspicious timing, ambiguous statements from which a retaliatory intent can be drawn, evidence of similar employees being treated differently, or evidence that the employer offered a pretextual reason for the termination." *Pagel v. TIN Inc.*, 695 F.3d 622, 631 (7th Cir. 2012) (citing *Jajeh v. Cnty. of Cook*, 678 F.3d 560, 570 (7th Cir. 2012)).

To establish a causal connection, Plaintiff pleads that in response to her request for accommodation, Defendant stripped her of her official duties, demanded she return her key, and placed her on administrative leave. (Doc. 28 at 7). However, these alleged events happened on September 21, 2021—before Plaintiff's first request for an accommodation—as Defendant correctly points out. (Doc. 32 at 8). To establish a causal link, the defendant's retaliatory activities must come after the alleged statutorily protected activity. *See, e.g.*, *Arce v. Chicago Transit Auth.*, 738 F. App'x

355, 359–60 (7th Cir. 2018) ("[T]his November 2012 decision to terminate him certainly is not causally linked to requests that he later made in December."). Thus, Plaintiff's reliance on the stripping of her official duties as the operative adverse employment action fails to provide a retaliatory motive since it occurred prior to her request for accommodation.

Plaintiff alleges further that on or about October 18, 2021, "Defendant Vincent initiated a campaign to solicit peer complaints against plaintiff, thereby creating a hostile and intimidating work environment." (Doc. 28 at 16). Defendant argues that this does not establish that Plaintiff engaged in a statutorily protected activity in light of her statement that Vincent only requested the peer comments after Plaintiff's attorney informed Defendant's attorney that Plaintiff was "uncomfortable with returning to Cornell so long as the main door was not functioning properly." (Doc. 32 at 9). Defendant contends that the communication between Plaintiff's and Defendant's attorneys does not amount to a statutorily protected activity under the ADA, relying on *Preddie v. Bartholomew Consol. Sch. Corp.,* 799 F.3d 806, 814–15 (7th Cir. 2015), a case decided at the summary-judgment stage. However, *Preddie* lends little support to this assertion, as it is not a case about an attorney acting on an employee's behalf but about an employee's intermittently requesting days off throughout a school year, without actually requesting an accommodation. *Id.* at 813. Moreover, Plaintiff pleads not just one event, but a sequence of events leading to the solicitation of peer complaints. Plaintiff pleads in her Complaint that she provided a doctor's note requesting for accommodation to work from home. (Doc. 28 at 8). The

15

communication by Plaintiff's attorney closely followed this request such that it could be viewed as a reminder of the earlier request for accommodation. This could meet the protected-activity requirement and preceded the solicitation of peer complaints.

"In deciding whether there is a causal connection between a plaintiff's protected activity and an adverse employment action, courts 'consider the evidence as a whole,' including 'suspicious timing.' " *Harris v. Martinez*, No. 22-CV-00373, 2023 WL 3504930, at *6 (N.D. Ill. May 17, 2023) (citing *Parker v. Brooks Life Science, Inc.*, 39 F.4th 931, 936–37 (7th Cir. 2022)). Here, Plaintiff has sufficiently pleaded factual allegations, including suspicious timing, to support a plausible claim for retaliation at this stage of proceedings. Thus, accepting the well-pleaded facts as true and drawing all reasonable inferences from those facts in Plaintiff's favor, Defendant's Motion is denied as to Count II, but Plaintiff may proceed only with the claim as to adverse actions that occurred after the request for accommodation, and only against Defendant Board.

## IV.  Count III: 42 U.S.C. § 1983 Claim for Deprivation of First Amendment Rights and For Wrongful Termination of Employment

Plaintiff asserts a claim under 42 U.S.C. §1983, alleging her First Amendment right to speak freely on matters of public concern without retaliation was infringed. (Doc. 28 at 17). The heading states that the count is against all defendants, and as such, it is important to address some preliminary issues of who can be sued as a defendant under 42 U.S.C. § 1983. A local government authority may only be sued under § 1983 for injury inflicted by the execution of its policy or custom. See *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694, (1978); *Mahoney v.*

16

*Beacon Health Ventures*, 585 F. Supp. 3d 1161, 1172 (N.D. Ind. 2022). With respect to local government employees, there is no need to bring official capacity suits against such employees when the local government authority is sued personally for damages, injunctive or declaratory relief. *Boss Hoggs BBQ, LLC v. Marion Cnty. Prosecutor's Off.*, No. 1:10-CV-1318-TWP-TAB, 2012 WL 639524, at *2 (S.D. Ind. Feb. 2, 2012), *report and recommendation adopted*, No. 1:10-CV-1318, 2012 WL 639116 (S.D. Ind. Feb. 27, 2012). Such employee may be sued in their personal capacity for their personal involvement in the deprivation claim at issue but not for their supervisory authority. *Kelly v. Mun. Cts. of Marion Cnty., Ind.*, 97 F.3d 902, 909 (7th Cir. 1996). Here, Defendants do not dispute that Plaintiff has alleged that Defendant Board, a local government body, implemented policies which resulted in injury and harm to the Plaintiff. (Doc. 28 at 18–19). Plaintiff has also alleged personal involvement of Defendant Vincent in causing Plaintiff injury. (Doc. 28 at 18–19). However, Plaintiff's official capacity suit against Defendant Vincent must be dismissed with prejudice since the Board is already a party to the suit. Thus, the Court dismisses Plaintiff's official capacity claim under this count against Defendant Vincent with prejudice as being redundant. Further, Plaintiff may only proceed on her personal capacity claim under this count against Defendant Vincent with respect to the actions he took personally.

To establish a First Amendment retaliation claim, a plaintiff must demonstrate that "(1) his speech was constitutionally protected, (2) he has suffered a deprivation likely to deter speech, and (3) his speech was at least a motivating factor

in the employer's action." *Swetlik v. Crawford*, 738 F.3d 818, 825 (7th Cir. 2013) (citing *Peele v. Burch,* 722 F.3d 956, 959 (7th Cir. 2013)). Here, the main issue in contention is whether Plaintiff's speech is constitutionally protected. Defendants contend that Plaintiff's speech was made pursuant to her employment (doc. 32 at 9), while Plaintiff argues that she made the speech as a private citizen on a matter of public concern (doc. 33 at 12–13).   Generally, a public employee's speech is constitutionally protected if "(1) he spoke as a private citizen rather than in his capacity as a public employee; (2) he spoke on a matter of public concern; and (3) his interest in expressing the speech is not outweighed by the state's interests as an employer in 'promoting effective and efficient public service.' " *Lett v. City of Chicago*, 946 F.3d 398, 400 (7th Cir. 2020) (quoting *Swetlik v. Crawford*, 738 F.3d 818, 825). Here, it is not enough that Plaintiff spoke on an alleged matter of public concern. Plaintiff must also demonstrate that she engaged in the speech as a private citizen, and not pursuant to her public-employment duties.

"When public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). However, the fact that a communication pertains to an employee's job does not automatically make it official-capacity speech:

> [T]he mere fact that a citizen's speech concerns information acquired by virtue of his public employment does not transform that speech into employee—rather than citizen—speech. The critical question under *Garcetti* is whether the speech at issue is itself ordinarily within the

scope of an employee's duties, not whether it merely concerns those duties.

*Lane v. Franks*, 573 U.S. 228, 240 (2014).

Where an employee gives testimony before a jury or reports misconduct outside established channels or in violation of office policy, she is speaking as a citizen and not an employee. *Spalding v. City of Chicago*, 24 F. Supp. 3d 765, 776 (N.D. Ill. 2014). *See e.g., Lane*, 573 U.S. at 238 (employee subpoenaed to testify before a jury was found to have done so as a private citizen). In contrast, "if the employee reports misconduct in the manner directed by official policy, to a supervisor, or to an external body with formal oversight responsibility, then the employee speaks pursuant to her official duties and her speech is unprotected." *Spalding*, 24 F. Supp. 3d at 776; *see also, Tamayo v. Blagojevich*, 526 F.3d 1074, 1091 (7th Cir. 2008) (holding that an Illinois Gaming Board employee who gave testimony before the Illinois House Gaming Committee, a legislative committee responsible for overseeing the activities of the board, did so as part of her official duties).

Here, Plaintiff was employed as auditor, bookkeeper, and executive assistant. (Doc. 28 at 4). Specifically, Plaintiff averred in her Complaint that she was recruited by the former superintendent to "help fix the books for Cornell since it was a known fact that the financial books were a 'mess.'" (Doc. 28 at 9). Pursuant to this role, Plaintiff discovered and reported financial mismanagement, school security issues, and violations of state and federal law to ISBE and the Regional Superintendent of Schools. As in *Tamayo*, where an employee testified before the Illinois House Committee responsible for overseeing the activities of Illinois Gaming Board, Plaintiff

19

reported the issues with Cornell's security and financial mismanagement to ISBE and the Regional Superintendent responsible for supervising public schools in Illinois. Thus, since the alleged outside agencies are bodies with formal responsibility for overseeing activities at Cornell, Plaintiff made the report in furtherance of her official duties.

However, Plaintiff also argues that she went outside her professional obligations when she reported the embezzlement by the former bookkeeper and the school security breach incident to the police. (Doc. 33 at 13). The Court agrees. While the reports to the ISBE and the Regional Superintendent were made to bodies with oversight responsibility over Cornell—and by extension, Plaintiff—the report to the police was a report to an outside agency. *See e.g., Spalding*, 24 F. Supp. 3d at 776 (court found that plaintiff police officers spoke as private citizens when they reported official misconduct to the FBI, an outside law-enforcement agency, rather than solely through internal Chicago Police Department channels); *see also Kristofek v. Vill. Of Orland Hills*, 832 F.3d 785, 793 (7th Cir. 2016) (court found that plaintiff, whose job responsibilities as part-time police officer involved traffic enforcement and placing calls for public service and officer back-up, spoke as a private citizen when he reported official misconduct to the FBI). Here, just as in *Spalding* and *Kristofek*, where the plaintiffs reported official misconduct to the FBI, an outside agency, Plaintiff reported the embezzlement by the former bookkeeper and the school security breach incident to the police, an outside agency. Plaintiff's official duties as stated in the Complaint

(doc. 28 at 4–5) did not include making the reports to the police. Thus, Plaintiff acted as a private citizen when she made the police reports.

For the foregoing reasons, Count III survives. Defendants' motion to dismiss Count III is denied. Since the Court finds that Plaintiff's reports to ISBE and the Regional Superintendent were made pursuant to her official duties, Plaintiff may only proceed under this claim with respect to her reports to the police.

## V. Count IV: 42 U.S.C. § 1983 Claim for Deprivation of Fourteenth Amendment Rights Based on Retaliation

Defendant Vincent moved to dismiss Count IV because the Fourteenth Amendment does not establish a general right to be free from retaliation (doc. 32 at 11). *See Boyd v. Ill. State Police*, 384 F.3d 888, 898 (7th Cir. 2004); *Gray v. Lacke*, 885 F.2d 399, 414 (7th Cir. 1989). In response, Plaintiff voluntarily dismissed Count IV. (Doc. 33 at 1). The Court agrees with Defendant Vincent's analysis and dismisses Count IV with prejudice since it would be of no consequence to refile it.

## VI. Count V: Indemnification

Plaintiff seeks state-law indemnification against Defendant Board for the actions of Defendant Vincent under the Illinois Torts Immunity Act, 745 ILCS § 10/1-102 and § 9-102. Plaintiff voluntarily withdrew her Fourteenth Amendment deprivation claim against Defendant Vincent, and it is now dismissed with prejudice. However, since Plaintiff still has a standing First Amendment deprivation claim against Defendant Vincent, under 42 U.S.C. §1983, Defendant's motion to dismiss Count V is denied.

### CONCLUSION

21

For the foregoing reasons, Defendant's Motion to Dismiss (doc. 31) is GRANTED IN PART and DENIED IN PART. Defendants' Motion to Dismiss is GRANTED as to Count IV, which is DISMISSED with prejudice. Defendants' Motion to Dismiss is DENIED as to Counts I, II, III, and V. All claims brought against Defendant Vincent in Counts I and II in his personal and official capacity are dismissed with prejudice. Plaintiff's claim against Defendant Vincent in his official capacity under Count III is dismissed with prejudice. Defendants' Answer to the respective claims against them in Counts I, II, III, and V—subject to the limitations imposed by this Court on these Counts—is due within fourteen (14) days of the date of this Order.

SO ORDERED.

Entered this 25th day of July 2024.

s/ Joe B. McDade
JOE BILLY McDADE
United States Senior District Judge
