**IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION**

BAILEY CONROY,
        Plaintiff,

v.

Case No. 1:23-cv-01315

BOARD OF EDUCATION FOR
CORNELL COMMUNITY
CONSOLIDATED SCHOOL
DISTRICT NO. 426, *et al.*,
        Defendants.

## Order

Now before the Court is the Defendants, Board of Education for Cornell Community Consolidated School District No. 426 ("Cornell") and Randall Vincent's Motion for Summary Judgment.[1] For the reasons set forth below, Defendants' Motion is denied.

## I

On March 2, 2026, the Defendants filed the pending Motion. (D. 53). The Plaintiff filed a response (D. 60), to which the Defendants replied. (D. 62). The matter is therefore fully briefed.

## II

This case arises out of the Defendants' termination of the Plaintiff from her position as bookkeeper and administrative assistant with Cornell. The Plaintiff was hired in July of 2021 by then-superintendent Dr. Jancek, as an at-will employee. (D. 53 at ECF p. 2). During the Plaintiff's tenure, she made two relevant calls to law enforcement. The first, on September 7, 2021, was to report fraud that she suspected

---

[1] Citations to the electronic docket are abbreviated as "D. ___ at ECF p. ___."

1

on the part of the former bookkeeper. The second, on September 21, 2021, reported a parent who had an allegedly-aggressive verbal interaction with the Plaintiff and Dr. Jancek after breaching the school's security.

After the September 21 incident, Dr. Jancek and Cornell terminated their contract, and the Plaintiff returned her work laptop and left Cornell's premises. In the wake of Dr. Jancek's termination, Dr. Vincent (co-Defendant in this case) was hired as interim superintendent. He, purportedly, was under the impression that the Plaintiff would return to work. Accordingly, on September 27, 2021, Cornell School Board's President emailed the Plaintiff and asked that she return to work at Cornell.

On October 12, 2021, the Plaintiff responded and included a doctor's note from Ming Xu, MD. The note provided that the Plaintiff was "being treated for: Mild episode of recurrent major depressive disorder; Panic disorder, and … ADHD". (D. 56-8). Dr. Xu further provided: "I am asking to please consider her condition for reasonable accommodations in her work environment." *Id*. Then, on October 14, 2021, the Plaintiff e-mailed Dr. Vincent with a more specific accommodation request. She stated: "I know that payroll and invoices will need to be done next week and I have every intention of returning to work if the building security and door issues have been resolved and the district can ensure a safe work environment. If no action has been taken to resolve these issues, I would like to renew my request to work remotely which would be a reasonable accommodation as advised by my doctor." (D. 53-8 at ECF p. 9). Three days later, Dr. Vincent responded that "nothing has changed regarding our entrance doors and will not change until we can get contractor bids", and that "[t]here is no option for working remotely." (*Id*. at ECF p. 10).

After this correspondence, Dr. Vincent "held a meeting with the approximately 20 teachers and staff at Cornell to get a lay-of-the-land before Plaintiff's return." (D. 53 at ECF p. 5). After hearing the staff's complaints at that meeting, Dr. Vincent "asked anyone who had a legitimate complaint to put it in writing and send it to him." (*Id*. at ECF p. 6). After reviewing the complaints, Dr. Vincent "sent a letter to Plaintiff and

her counsel stating his recommendation for termination and advising them of a dismissal hearing in front of the Cornell School Board." *Id*. After the hearing, the four-member Cornell School Board voted to terminate the Plaintiff, of which the Plaintiff was notified on December 13, 2021. (D. 53-8).

After the Plaintiff was terminated, she filed two EEOC charges and the pending lawsuit. Currently, the Plaintiff has four remaining claims: Count One (ADA Disability Discrimination against Cornell), Count Two (ADA Disability Retaliation against Cornell), Count Three (42 U.S.C. § 1983 Deprivation of 1st Amendment Rights and Wrongful Termination of Employment against both Defendants), and Count Five (Indemnification against Cornell for Dr. Vincent's ostensible liability under Count Three). In the pending Motion, the Defendants move for summary judgment against all of the Plaintiff's remaining claims. The Plaintiff, meanwhile, asserts that factual disputes exist as to both her ADA claims and her § 1983 claim.

### III

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party has the burden of providing proper documentary evidence to show the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323-24. Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials of the pleadings, which demonstrate that there is a genuine issue for trial. *Gracia v. Volvo Europa Truck, N.V.*, 112 F.3d 291, 294 (7th Cir. 1997). "[A] party moving for summary judgment can prevail just by showing that the other party has no evidence on an issue on which that party has the burden of proof." *Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1183 (7th Cir. 1993). "The parties must support their assertions that a fact cannot be or is genuinely disputed by citing to 'particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or

3

declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . .'" *Horton v. Pobjecky*, 883 F.3d 941, 948 (7th Cir. 2018). However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment . . . [I]t is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Id.* at 248. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [the non-movant's] favor." *Anderson*, 477 U.S. at 255 (1986). Finally, a scintilla of evidence in support of the non-movant's position is not sufficient to successfully oppose a summary judgment motion; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Id.* at 250. "The same standard applies when considering cross-motions for summary judgment." *City of Chi. v. Equte LLC*, 693 F. Supp. 3d 879, 889 (N.D. Ill. 2023) (citing *Int'l Bhd. of Elec. Workers, Loc. 176 v. Balmoral Racing Club, Inc.*, 293 F.3d 402, 404 (7th Cir. 2002)). Therefore, when considering the Plaintiff's Motion for Summary Judgment, the Court views all the evidence in the light most favorable to Defendants, and when considering Defendants' Motion for Summary Judgment, the Court views all the evidence in the light most favorable to the Plaintiff. *Id.*

## IV

The Court will first address the Plaintiff's ADA-discrimination claim (Count One) and ADA-retaliation claim (Count Two), before assessing the Plaintiff's § 1983 claim (Count Three).

## A

Under Count One, the Plaintiff alleges that she is a qualified individual under the ADA due to her generalized anxiety, depression, and ADHD. And following the

4

September 21 incident, in which "an angry parent gained unauthorized access to Plaintiff's office, directly confronting and berating her", (D. 28 at ECF p. 14), the Plaintiff's conditions were "exacerbated". *Id.* In response to that incident, the Plaintiff alleges that she requested a reasonable accommodation (*i.e.*, to work remote until certain security measures were put in place), and her request was wrongfully denied.

In the pending Motion, the Defendants argue that, for several reasons, this claim is subject to summary judgment. First, the Defendants contest that the Plaintiff is a qualified individual under the ADA. Next, even if the Plaintiff is qualified, argue the Defendants, her physical presence at the school was required to perform the job's essential functions; her requested accommodation, therefore, was not reasonable.

In response, the Plaintiff argues that the Defendants' Answer in this case admits that the Plaintiff is a qualified individual under the ADA. Further, the Plaintiff's requested accommodation, she argues, was reasonable based on the report of her doctor and the requirements of her job. And even if a dispute exists as to whether remote work would enable her to complete the job's essential functions, argues the Plaintiff, a jury must resolve that question of fact. Lastly, the Plaintiff contends that the Defendants' failure to engage in any dialogue about the proposed accommodation undermines the required interactive process.

The Court will address in turn whether the Plaintiff is a qualified individual, whether her requested accommodation was reasonable, and (if necessary) whether the parties engaged in the interactive process.

**i**

The Defendants first argue that the Plaintiff is not a qualified individual under the ADA. "Under the ADA, a 'qualified individual with a disability' is one who, with or without reasonable accommodation, can perform the essential functions of the job." *Peters v. City of Mauston*, 311 F.3d 835, 842 (7th Cir. 2002) (citing 42 U.S.C. § 12111(8)). The ADA "further specifies that an individual has a disability if she possesses '(A) a physical or mental impairment that substantially limits one or more of the major life

5

activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment.'" *Kotwica v. Rose Packing Co.*, 637 F.3d 744, 748 (7th Cir. 2011) (quoting 42 U.S.C. § 12102(1)).

In their Answer to the Plaintiff's operative complaint, Cornell admits that the Plaintiff is a qualified individual. Specifically, the Answer provides: "Defendant Cornell admits that Plaintiff has been diagnosed with anxiety, which is a protected disability under the ADA and renders her a qualified individual with a disability within the meaning of the ADA." (D. 35 at ECF p. 25). And of course, "[j]udicial admissions are formal concessions in the pleadings ... that are binding upon the party making them." *Keller v. United States*, 58 F.3d 1194, 1198 n.8 (7th Cir. 1995). Accordingly, on this basis alone, the Court rejects the Defendants' argument that, as a matter of law, the Plaintiff is not a qualified individual with a disability. *See Williams v. Illinois Dep't of Corr.*, No. 97 C 3475, 1999 WL 1068669, at *5–6 (N.D. Ill. Nov. 17, 1999) (considering the defendant's answer that "Defendants admit that plaintiff is disabled but deny that he has been denied the safe use of the alleged facilities at Joliet Correctional Center", and concluding that "pursuant to [the defendant's] answer, there is no dispute that [the plaintiff] is a qualified individual with a disability as defined under the ADA").

As a separate basis, the Plaintiff also proffers sufficient evidence to defeat summary judgment on this score. Specifically, she points to the deposition testimony of Dr. Xu (Plaintiff's physician), who provided that "ADHD [can] substantially limit a person's ability to concentrate" and "think or process information", and "panic disorder" can "impair [one's] ability to work while … experiencing panic symptoms". (D. 57 at ECF p. 32:2–12). Dr. Xu further testified that "workplace stressors" can "exacerbate the symptoms of a panic disorder", and that the Plaintiff experienced such "environmental stressors at work." (*Id.* at p. 33:7–16). And when such stressors cause a panic attack, testified Dr. Xu, "in that moment of course [the stressors] can impact tremendously function, yeah." (*Id.* at p. 34:1–3). Naturally, then, the Plaintiff

argues (in conjunction with Dr. Xu's testimony) that the Plaintiff's anxiety, depression, and panic ailments substantially limit her ability to complete her job at Cornell. This argument of course is against the backdrop of the September 21, 2021 incident, in which Cornell's security was allegedly breached by an angry parent, thus exacerbating the Plaintiff's conditions and symptoms.

The Defendants dispute the import of this testimony, and argue that the Plaintiff has worked satisfactorily in other school-office environments post-Cornell. But whether the Plaintiff's ailments substantially limited her ability to complete work at Cornell (due to feelings of panic, lack of concentration, and episodes of depression), as opposed to other school's environments, is a factual question for a jury to resolve. *See E.E.O.C. v. AutoZone, Inc.*, 630 F.3d 635, 643 (7th Cir. 2010) (internal citation omitted) (reversing summary judgment in favor of the employer and holding that "[t]he assessment of an impairment under the ADA is a highly individualized examination that considers the facts of each case independently in light of the statutory and regulatory language. A reasonable jury could readily determine from the totality of the evidence in this record that Shepherd was substantially limited in his ability to care for himself from March 2003 to September 2003."); *Coleman v. Keebler Co.*, 997 F. Supp. 1102, 1112 (N.D. Ind. 1998) ("Our ultimate inquiry question on summary judgment is: Does the record support a reasonable inference that could lead the jury to find that the plaintiff is substantially limited in the major life activity of working? On this record, the answer clearly is 'Yes.' Although the Plaintiff contends that she can perform the fry packer position without accommodation, substantial evidence exists, particularly in Gates' deposition, that this is merely a 'brave front.' That is, a reasonable jury could find that Plaintiff holds an admirable and ambitious view of her physical abilities, but in reality Gates' testimony is correct, and her physical limitations in fact preclude her from performing any of twelve different jobs within the Bluffton plant without reasonable accommodation.").

Thus, both because Cornell admitted in its Answer that the Plaintiff is a qualified individual under the ADA, and because the Plaintiff has put forth evidence that raises a genuine dispute of fact, the Defendants' Motion is denied on this front.

**ii**

Having established that the Plaintiff is a qualified individual, the Court next will assess whether a reasonable juror could find that the Plaintiff could perform remotely the essential functions of her job; *i.e.,* whether her requested accommodation was reasonable.

The Defendants argue that the essential functions of the Plaintiff's job required her physical presence. In support, the Defendants point to then-superintendent Dr. Jancek's and Dr. Vincent's expectation that the Plaintiff "be in the office by her side." (D. 53 at ECF p. 9). The Defendants also argue that the job description outlines a need to work in-office.

The Plaintiff, meanwhile, highlights Dr. Jancek's testimony that "front-office duties were secondary, Vincent admitted he never really analyzed which duties could not be done remotely, and the same SDS system used for bookkeeping and payroll could be accessed remotely." (D. 60 at ECF p. 31). The Plaintiff also argues that the job description does not explicitly require her physical presence.

"[T]he United States Equal Employment Opportunity Commission ("EEOC") regulations provide that the essential functions are the 'fundamental job duties' of a position, rather than the position's 'marginal functions,' and that courts should examine several factors to determine essential functions." *Dunderdale v. United Airlines, Inc.*, 807 F.3d 849, 853–54 (7th Cir. 2015) (quoting 29 C.F.R. § 1630.2(n)(1)-(3)). Those factors include: "(i) the employer's judgment; (ii) written job descriptions; (iii) amount of time spent performing the function; (iv) consequences of not requiring the employee to perform the function; (v) terms of a collective bargaining agreement; (vi) work experience of prior employees in the position; and (vii) current work experience of employees in similar jobs." *Id.* at 854, n.1 (citing § 1630.2(n)(3)).

Here, the evidence presented raises a triable issue of fact as to whether the Plaintiff's proposed accommodation would permit her to perform the essential functions of the job. In other words, the Defendants have failed to carry their evidentiary burden that the Plaintiff could not temporarily perform remotely the essential functions of her job. Beginning with the job description, the Defendants argue that it requires in-person presence. But they point to no such language in the job description. And the Court's review of the description (D. 53-6) also reveals no clear directive that the Plaintiff must be in person. Sure, there are facts that suggest in-person presence is preferable; for example, to "[o]perate office equipment", "[g]reet[ ] visitors, students, staff and callers", and other responsibilities that imply physical presence. But there certainly exists a factual dispute as to whether (1) those tasks are essential to the job, and (2) whether the Plaintiff's proposal to temporarily work remote would undermine her ability to perform the actually-essential functions.

Moreover, the parties' deposition testimony fails to foreclose this factual dispute. For example, former superintendent Dr. Jancek testified that, "if she had the right materials," the Plaintiff "could have done a quite a bit, at least done some of her work from home", and in particular, "payroll". (D. 56-3 at 99:23–24, 100:1–2, 4). Moreover, the Plaintiff represented that while on leave, she did in fact work remotely for Cornell. Specifically, she testified that she worked remotely when Cornell requested that she, "after putting [her] on leave[,] type up board minutes and give them documentation." (D. 56-4 at 49:7–15).

The job description, coupled with the offered testimony, create a genuine dispute of fact as to whether the Plaintiff's proposed accommodation was reasonable. *See Brown v. Smith*, 827 F.3d 609, 614 (7th Cir. 2016) (holding that, in part, testimony by a supervisor "that he knew Brown did not have a CDL when Brown became a street supervisor, and that driving buses was not a key responsibility for supervisors because other individuals with CDLs were typically available to drive buses when

9

necessary" helped establish a genuine dispute of fact as to whether having a CDL was an "essential function" of the plaintiff's "street-supervisor position").[2]

B

Next, the Court will address the Defendants' effort to dismiss the Plaintiff's ADA-retaliation claim. Specifically, the Defendants argue that there is no causal connection between (1) the Plaintiff's accommodation request and (2) Cornell terminating the Plaintiff. Rather, the Defendants argue that the clear cause for the Plaintiff's termination was the litany of complaints that Dr. Vincent received from Cornell's staff about the Plaintiff's job performance. In support, the Defendants posit that at the Plaintiff's termination hearing, no one—including the Plaintiff—brought up the Plaintiff's request to work from home. Accordingly, the Defendants argue that summary judgment is proper.

In response, the Plaintiff avers that the complaint process was initiated in retaliation to the Plaintiff's accommodation request. Thereafter, the Defendants used the complaints as pretext to terminate the Plaintiff, all while the true reason was to retaliate against the Plaintiff for requesting an accommodation. In support, the Plaintiff points out that "no documented performance concerns existed before the accommodation request", (D. 54 at ECF p. 40), and that the husband of the former bookkeeper whom the Plaintiff reported for embezzlement—one of only four voting Board members—"voted to terminate Conroy without any disclosure or recusal". *Id.*

To succeed on an ADA-retaliation claim, a plaintiff must prove that she "engaged in protected activity, that she suffered an adverse action, and that there is a causal connection between the two." *Rowlands v. United Parcel Serv. — Fort Wayne*, 901 F.3d 792, 801 (7th Cir. 2018). On the element of causation (the one in dispute here), summary judgment must be denied if the plaintiff "demonstrate[s] a triable issue as to whether discrimination motivated the adverse employment action." *Hanners v.*

---

[2] Because we deny summary judgment against this claim, there is no need to reach the Plaintiff's argument that the Defendants failed to engage in the interactive process.

*Trent*, 674 F.3d 683, 691 (7th Cir. 2012) (quoting *Davis v. Time Warner Cable of Se. Wis., L.P.*, 651 F.3d 664, 672 (7th Cir. 2011)).

Here, we find that the Defendants have failed to carry their burden of foreclosing a genuine factual dispute as to whether the staff's complaints about the Plaintiff were used as pretext to terminate the Plaintiff. As an initial matter, the Plaintiff requested her accommodation shortly before Cornell's staff convened to launch their grievances about the Plaintiff. While timing alone does not always stave off summary judgment, it certainly can raise a genuine dispute of fact when the adverse action is tied closely to the accommodation request, and evidence of pretext is also presented. *See Anderson v. Donahoe*, 699 F.3d 989, 996 (7th Cir. 2012) (quoting *Scaife v. Cook Cnty.*, 446 F.3d 735, 742 (7th Cir. 2006)) ("With respect to 'suspicious timing,' we have explained that '[c]lose temporal proximity provides evidence of causation and may permit a plaintiff to survive summary judgment provided that there is other evidence that supports the inference of a causal link.'"). And here, the Plaintiff provides not only persuasive evidence of timing, but of pretext. Specifically, the Plaintiff avers that Dr. Vincent organized the meeting to hear complaints (post-accommodation request), and that "no written complaints existed before [the Plaintiff] engaged in protected conduct." (D. 60 at ECF p. 39).

Granted, the Defendants provide evidence that none of those complaints directly cited the Plaintiff's accommodation request. Moreover, the Defendants have provided evidence that, at the Plaintiff's termination hearing, the Plaintiff's accommodation request was not even referenced. But when weighed against (1) the Plaintiff's evidence of timing (i.e., that the complaints were lodged only four days after the Plaintiff's accommodation request), (2) the Plaintiff's allegation that Mr. Vincent "solicited" the complaints, and (3) that no complaints, discipline, or other issues with the Plaintiff's performance were lodged prior to the accommodation request, a genuine dispute of fact is apparent. *See Coleman v. Donahoe*, 667 F.3d 835, 860 (7th Cir. 2012) (reversing grant of summary judgment where the employee

"offered evidence of suspicious timing and pretext," where the accommodation request and adverse action were separated by one month, because "an interval of a few weeks or even months may provide probative evidence of the required causal nexus"); *Hunt–Golliday v. Metropolitan Water Reclamation Dist.*, 104 F.3d 1004, 1014 (7th Cir. 1997) ("Interpreting the facts in [the plaintiff's] favor, she can show a pattern of criticism and animosity by her supervisors following her protected activities ... [that] supports the existence of a causal link.").

While the Court understands that its role is not that of a "super-personnel department", *Coleman*, 667 F.3d at 862, genuine factual disputes must reach a jury. The Court makes no finding that the Defendants terminated the Plaintiff because of her accommodation request. But only four days of separation between the request and the complaint forum, combined with the fact that no complaints against the Plaintiff had been recorded prior to her accommodation request, heavily intertwines the Plaintiff's accommodation request with the Defendants' proffered, non-discriminatory reason for termination. Accordingly, these questions of fact must be decided by a jury. The Defendants' Motion is thus denied as to Count Three.

## C

Lastly, the Court will address the viability of the Plaintiff's § 1983 claim, and whether Mr. Vincent may be personally liable.

### i

In Count Three, the Plaintiff alleges that, in her capacity as bookkeeper, she discovered financial mismanagement by a prior bookkeeper and reported it to the police as fraud. The Plaintiff also reported to the police the September 21 incident, in which a parent breached security, entered the school, and was verbally aggressively towards the Plaintiff and then-superintendent Dr. Jancek. The Plaintiff alleges that these reports were a motivating factor in her termination, in violation of her First Amendment rights.

12

The Defendants argue that summary judgment is proper because there is no evidence linking the police reports to the Plaintiff's termination. Rather, the Plaintiff's termination, the Defendants argue, was "solely" because of the "teacher complaints about Plaintiff". (D. 53 at ECF p. 12). Thus, there was no retaliation in response to the Plaintiff's speech, argues the Defendants, because the adverse action had a separate basis.

Conversely, the Plaintiff argues that two circumstances prove (or at least, raise a dispute) that the Plaintiff's First Amendment activity played a role in her termination. First, the Plaintiff highlights that one of Cornell's four voting board members is married to the bookkeeper whom the Plaintiff reported for fraud. Second, "[n]o written complaints existed before Conroy engaged in protected conduct," which creates a reasonable inference, argues the Plaintiff, that the complaint process and termination were in part motivated by the Plaintiff's police reports. (D. 60 at ECF p. 39).

Under § 1983, a First Amendment retaliation claim requires that a plaintiff "(1) engaged in activity protected by the First Amendment, (2) suffered a deprivation that would likely deter First Amendment activity in the future, and (3) the First Amendment activity was … 'at least a motivating factor' in the Defendant['s] decision to take the retaliatory action." *145 Fisk, LLC v. Nicklas*, 986 F.3d 759, 766 (7th Cir. 2021) (quoting *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008)). Once the plaintiff makes the causation showing, "the burden shifts to the defendant to show that the harm would have occurred anyway." *Milliman v. Cnty. of McHenry*, 893 F.3d 422, 430 (7th Cir. 2018). And "[o]nce a defendant produces evidence that the same decision would have been made in the absence of the protected speech, the burden shifts back to the plaintiff to demonstrate that the proffered reason was pretextual and that the real reason was retaliatory animus." *Id*.

Following this framework, the Court first finds that the Plaintiff carries her initial burden. The Plaintiff's two-fold evidence certainly raises a genuine dispute that

13

the voting was influenced by her police reports via (1) the bookkeeper's husband's participation in the voting process, and (2) the fact that the vote took place after the Plaintiff's police reports.

Turning to the Defendants' burden, they argue that the Plaintiff's First Amendment activity did not play a notable role in the Defendants' decision to terminate the Plaintiff. Rather, the Plaintiff's termination, the Defendants argue, was based solely on the staff's complaints. But the Court is hard-pressed to overlook the critical factual disputes: whether the staff's complaints and the Board's vote were impacted by (1) the bookkeeper's husband's participation and (2) the proximity to the September 21 incident. The Defendants' evidence falls short of negating the possibility that the Plaintiff's police reports played a role (or, were a "motivating factor") in her termination. That is, the Defendants do not carry their burden of separating their proffered, non-discriminatory rationale from the Plaintiff's First Amendment activity. It is for a jury to decide, then, whether the Plaintiff's termination was based solely on the staff's non-discriminatory complaints, or whether those complaints are intertwined with the Plaintiff's First Amendment activity, such that retaliation was a motivating factor in the Plaintiff's termination. *See, e.g., Mahoney v. Beacon Health Ventures*, 585 F. Supp. 3d 1161, 1174 (N.D. Ind. 2022) (denying the defendant's motion for summary judgment where the defendant argued that the plaintiff was removed for "a number of performance issues", but the plaintiff presented evidence that her First Amendment protected "Facebook post was the impetus for her removal from the jail," and thus a fact issue existed because "[t]he County Police Department has presented evidence that it might have already decided to fire Ms. Mahoney or that it would have eventually done so absent her Facebook post, but Ms. Mahoney has presented evidence that creates a factual dispute as to causation"); *Spiegla v. Hull*, 371 F.3d 928, 943 (7th Cir. 2004) (reversing the district court's granting of the defendant's motion for summary judgment where the plaintiff "demonstrated by a preponderance of the evidence that her [First-Amendment

14

protected] comments to Schrader were a substantial or motivating factor in her transfer and shift change"); *Frakes v. Elba-Salem Fire Prot., Dist.*, 200 F. Supp. 3d 736, 743 (C.D. Ill. 2016) ("While Elba-Salem offers clarifications and explanations casting these comments in a nondiscriminatory light, they are sufficient to present a genuine issue of material fact as to whether Frakes' protected speech was a motivating factor in the decision to end his employment with the department that requires resolution at trial. Accordingly, the Motion for Summary Judgment must be denied with respect to Frakes' § 1983 claim.").

### ii

Lastly, the Court assesses whether there is a triable issue as to Dr. Vincent's personal liability for the Plaintiff's § 1983 claim. For purposes of this claim, "supervisors may violate the Constitution resulting in their own individual liability if they 'know about the unconstitutional conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see.'" *Adedeji v. Cobble*, No. 10 C 0892, 2013 WL 449592, at *5 (N.D. Ill. Feb. 5, 2013) (quoting *T.E. v. Grindle*, 599 F.3d 583, 588 (7th Cir. 2010)).

The Defendants argue that, in a footnote, "[b]ecause Plaintiff has not made any allegations against Dr. Vincent in his personal capacity, but only allegations about the actions he took in his official capacity as the Cornell interim superintendent, there are no personal capacity claims against Dr. Vincent to respond to." (D. 53 at ECF p. 12, n.13).

In response, the Plaintiff points to her allegations that "Vincent personally denied the accommodation, solicited the complaints, compiled them, and recommended termination." (D. 60 at ECF p. 46).

The Court agrees that the Defendants have failed to carry their burden of foreclosing factual disputes as to Dr. Vincent's role in the Plaintiff's termination. The Defendants argue only that the Plaintiff fails to allege Dr. Vincent's involvement in the First Amendment retaliation. But the Plaintiff clearly alleges that Dr. Vincent

15

"solicited peer complaints," personally failed to "investigat[e]" her peer's "vague allegations," and "recommended that Conroy be terminated" to the Board. (D. 28 at ECF p. 10). Accordingly, the Defendants' argument that the Plaintiff "has not made any allegations against Dr. Vincent in his personal capacity" is unfounded. Consequently, the Defendants' Motion is denied on this score.[3]

## V

For the reasons set forth above, the Defendants' Motion for Summary Judgment (D. 53) is denied. This matter is referred to the Magistrate Judge for a settlement conference. If necessary, the Court will set pretrial deadlines and trial dates, if necessary, after conclusion of the settlement conference.

Should a party file a motion for reconsideration that is subsequently denied by the Court, the party filing the motion will be responsible for the attorneys' fees of the opposing party or parties related to their response to the motion for reconsideration.

*It is so ordered.*

Entered on April 14, 2026

s/Jonathan E. Hawley
U.S. DISTRICT JUDGE

---

[3] Beyond challenging the Plaintiff's allegations, the Defendants make no evidentiary or merit-based challenge as to Dr. Vincent's personal liability under § 1983.